**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JORDAN ALBRIGHT, ) <br> ) <br>     Plaintiff(s), ) <br> ) <br> vs. ) <br> ) <br> CLAYTON AND MYRICK, PLLC, et ) <br> al., ) <br> ) <br>     Defendant(s). | Case No. 4:19-cv-01887 SRC |

**Memorandum and Order**

This matter requires the Court to address whether the FDCPA imposes liability on debt collectors that inform debtors that failing to pay debts may result in legal action when the debt collectors knew no legal action would be brought.  Defendant Internal Credit Systems retains Defendant Clayton and Myrick to send debt collection letters that inform debtors that failing to pay the debt could result in a lawsuit or the case being referred to a local attorney.  Plaintiff Jordan Albright, the recipient of two such letters, moves for summary judgment, claiming these collection letters violate the FDCPA because Defendants never intended to initiate any legal action, evidenced by the fact that Defendants have never filed suit or referred debts like Albright's to a local attorney.  Defendants oppose the motion, arguing that it cannot be liable under the FDCPA for merely informing debtors that legal action may follow if a debt remains unpaid.

**I.      Background**

Plaintiff Jordan Albright filed a class-action suit against Defendants Clayton and Myrick, PLLC, Internal Credit Systems, Inc., and Robert J. Nauseef for violating the Fair Debt Collection Practice Act, 15 U.S.C. §1692, *et seq.*  Doc. 1.  In her Amended Complaint, Albright asserts that

Defendants violated 15 U.S.C. § 1692e(2), (5), and (10). Doc. 44. The Court dismissed Naussef from this action after Albright failed to timely serve him. Doc. 54 at pp. 2–3. Additionally, despite the Court ordering Albright to file any motion for class certification no later than March 15, 2020, Doc. 71, Albright never filed any such motion. Accordingly, her case proceeds solely on an individual basis.

Albright now moves for summary judgment. Doc. 80. Defendants oppose this motion, and instead argue that the Court should enter summary judgment in their favor. Doc. 84 at p. 4. With Albright having filed her reply, Doc. 85, the motion is now ripe for review. The summary judgment record establishes the following as undisputed facts, except as noted.

**A.     Facts**

Internal Credit Systems collects unpaid membership fees owed by gym members to their gyms. Doc. 80-2 at ¶ 1. It attempts to collect 3,000-4,000 of these accounts each year. *Id*. Albright owed a gym membership debt to Complete Fitness, and Complete Fitness assigned this debt to Internal Credit Systems. *Id*. at ¶ 2. Internal Credit Systems later sent a collection letter to Albright. *Id*. at ¶ 3.

Internal Credit Systems also sent Albright's Complete Fitness account to Clayton and Myrick for collection. *Id*. at ¶¶ 4, 14. Internal Credit Systems has worked with Clayton and Myrick for twenty years and pays Robert Nauseef (the attorney working for Clayton and Myrick who signed the collection letters to Albright) a salary every month. *Id*. at ¶¶ 14, 30. Internal Credit Systems and Clayton and Myrick worked together to create a boilerplate collection letter and have used the same letter for twenty years. *Id*. at ¶ 30. When Internal Credit Systems assigns it an account, Clayton and Myrick sends two collection letters to the debtor. *Id*. at ¶ 7.

Clayton and Myrick mailed the first collection letter to Albright in December 2018. *Id.* at ¶ 8. The letter advised Albright that Clayton and Myrick had been retained to collect the Complete Fitness debt, and further provided that:

> If the debt is not satisfied, then I may be directed to forward your account to counsel in your area for possible court action to collect on the debt. In accordance with local law, you may then become liable for the costs of court and interest in addition to the outstanding balance. If your contract specifies your liability for attorneys' fees, counsel may vigorously pursue those as well.

*Id.* at ¶ 9.

Clayton and Myrick mailed the second collection letter to Albright in January 2019. *Id.* at ¶ 10. In bolded font, the letter stated, "**Last and Final Notice from a Debt Collector!!**" *Id.* at ¶ 11. The letter also noted that Albright was "still in default and liable for this debt" and that she had "disregarded civil action against [Albright] for which [she] may become liable for costs of court and interest in addition to the outstanding balance." *Id.* at ¶ 12. The letter then specified that:

> **If the debt is not settled within ten (10) days, then I may be instructed to take further action accordingly and forward this account to counsel in your local area**. In accordance with local law, you may then become liable for the costs of court and interest in addition to the outstanding balance. If your contract or local law specifies your liability for attorneys' fees, local counsel may vigorously pursue those as well.

*Id.* at ¶ 13 (bold font in original).

Internal Credit Systems assigns several hundred collection matters to Clayton and Myrick each year, and has assigned approximately 180 Complete Fitness accounts to Clayton and Myrick over an approximately five-year period. *Id.* at ¶¶ 5, 6. Clayton and Myrick has never filed a debt collection lawsuit on any accounts Internal Credit Systems referred to it for collection. *Id.* at ¶¶ 15, 16. Additionally, of the approximately 180 Complete Fitness accounts referred to it, Clayton and Myrick has never been directed to forward an account to counsel in a

3

debtor's local area for possible court action—the lone exception being Albright's account. *Id*. at ¶ 18.

In the year preceding the present action, Clayton and Myrick mailed letters containing language similar to "**Last and Final Notice from a Debt Collector**" to forty-two Complete-Fitness debtors in Missouri on behalf of Internal Credit Systems. *Id*. at ¶ 18. Clayton and Myrick and Internal Credit Systems did not sue any of these debtors. *Id*. at ¶ 19. Nor were these debtors referred to a local attorney for collection. *Id*. at ¶ 20.

Complete Fitness has never heard of Clayton and Myrick, nor has it ever spoken with anyone at the firm. *Id*. at ¶ 21. Complete Fitness has never sued anyone that fell behind on a gym membership bill. *Id*. at ¶ 22. Nor has Clayton and Myrick sued any debtor on Complete Fitness's behalf. *Id*. at ¶ 23.

In August 2019, Internal Credit Systems called Complete Fitness to inform it that Albright had filed suit against Internal Credit Systems, and sought permission to sue Albright. *Id*. at ¶ 25. Internal Credit Systems had never before approached Complete Fitness to ask for authorization to sue any debtor. *Id*. at ¶ 24. Internal Credit Systems only asked Complete Fitness for permission to sue Albright because she brought the current lawsuit against it. *Id*. at ¶ 24.[1]

---

[1] The lone disputed facts center around whether Defendants advised Mary Albright, Jordan Albright's mother, that legal action was imminent in response to her call to the Defendants. Jordan Albright states that she asked Mary Albright to call Clayton and Myrick to learn about the status of her Complete Fitness account. *Id*. at ¶ 28. Mary called Clayton and Myrick and advised them that Jordan did not have responsibility for the debt because she was a minor when she incurred the Complete Fitness debt. *Id*. at ¶ 29. During the call, an individual working for Clayton and Myrick told Mary that a lawsuit would be filed imminently, and that Jordan needed to pay the debt or hire counsel. *Id*. Defendants dispute whether this phone conversation ever occurred. Doc. 84-1 at ¶ 2. They acknowledge that Mary Albright left a voicemail with Clayton and Myrick, but they never returned the call. *Id*. In her reply, Albright focuses on the collection letters sent by Defendants and appears to abandon the phone conversations involving her mother and the Defendants as a basis for summary judgment. Accordingly, the Court does not consider this phone conservation in ruling on this motion.

4

## II.     Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts.  *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  Self-serving, conclusory statements without support are insufficient to defeat summary judgment.  *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    Discussion

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors[.]"  15 U.S.C. § 1692(e); *see also Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119, 1121 (8th Cir. 2020) (quoting 15 U.S.C. § 1692(e)).  To establish a violation of the FDCPA, a

5

plaintiff must demonstrate that: (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a debt collector under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.  *Pace v. Portfolio Recovery Assocs., LLC,* 872 F. Supp. 2d 861, 864 (W.D. Mo. 2012) *aff'd,* 512 F. App'x 643 (8th Cir. 2013) (citation omitted).  The parties do not dispute that the first two elements have been met, and thus only the third element remains at issue.  *See* Doc. 84 at p. 3.

Albright argues that Defendants violated 15 U.S.C. § 1692e by using false or misleading representations to collect Albright's debt.  Doc. 80-1 at p. 6.  Albright claims that Clayton and Myrick sent false and misleading collection letters because they threatened to file suit or refer her case to an attorney if she failed to pay the debt even though Defendants never intended to file suit or refer the case to an attorney.  *Id*.  Additionally, although Clayton and Myrick sent the letters at issue, Albright seeks to hold Internal Credit Systems vicariously liable for Clayton and Myrick's debt collection activities.  Doc. 80-1 at p. 13.

Beginning with whether Internal Credit Systems can be held vicariously liable, the Eighth Circuit applies traditional agency principles to the FDCPA.  *Reygadas*, 982 F.3d at 1126.  Here, Internal Credit Systems retained Clayton and Myrick to collect Albright's debt, and Clayton and Myrick carried out collection activities on behalf of Internal Credit Systems by sending collection letters to Albright.  Doc. 80-1 at pp. 13–15.  Defendants do not address any of Albright's arguments related to vicarious liability in its opposition, thus waiving any argument that Internal Credit Systems cannot be held vicariously liable for Clayton and Myrick's unlawful collection activities.  *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009); *see also Wegmann v. Ethicon, Inc, et al*., No. 4:20-CV-00704 JAR,

6

2020 WL 6680893, at *3 (E.D. Mo. Nov. 12, 2020) ("[D]istrict courts have repeatedly held that when a non-moving party fails to respond to a motion for summary judgment with respect to certain claims or arguments, that party is deemed to have abandoned the claims and waived the arguments." (citations omitted)).  Accordingly, the Court finds that Internal Credit Systems can be held vicariously liable for any unlawful collection activities of Clayton and Myrick.

Shifting to whether Clayton and Myrick's collection activities violated the FDCPA, 15 U.S.C. § 1692e provides, in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means  in connection with the collection of any debt. Without limiting the general application of  the foregoing, the following conduct is a violation of this section:
>
> ...
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> ...
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

 "When evaluating whether a communication is false, deceptive, or misleading, [courts] consider the perspective of an 'unsophisticated consumer.'"  *Janson v. Katharyn B. Davis, LLC*, 806 F.3d 435, 437 (8th Cir. 2015) (quoting *Peters v. Gen. Serv. Bureau, Inc.,* 277 F.3d 1051, 1055 (8th Cir. 2002)).  This standard is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder.'" *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (quoting *Duffy v. Landberg*, 215 F.3d 871, 874 (8th Cir. 2000)).  But the standard "also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters." *Id*. at 317–18 (citation omitted).  The Eighth Circuit also applies a materiality

7

requirement to actions under 15 U.S.C. § 1692e. *Hill v. Accounts Receivable Servs., LLC*, 888 F.3d 343, 346 (8th Cir. 2018). As a result, "a false but non-material statement" by a debt collector does not violate the FDCPA. *Id*.

Albright first cites *Demarais v. Gurstel Chargo, P.A*., 869 F.3d 685 (8th Cir. 2017) for support. Doc. 80-1 at p. 6. There, a law firm filed a debt collection action against a consumer in Minnesota state court. *Demarais*, 869 F.3d at 689. The law firm regularly filed these actions, and "[w]hen alleged debtors d[id] not file answers, [the law firm] often allow[ed] the cases to be set for trial rather than moving for default judgments. On the trial date, [the law firm] appear[ed] without any client representatives, witnesses, or other evidence." *Id*. "Rather than seeking default judgments, [the law firm] s[ought] judgments based on non-appearance at trial[,]" but "[i]f a consumer appear[ed] for trial, [the law firm] either request[ed] a continuance or dismisse[d] the suit." *Id*.

In line with this practice, the law firm appeared for the plaintiff's trial without any "client representatives, witnesses, or other evidence." *Id*. at 690. When the plaintiff appeared for the trial, the law firm requested a continuance. *Id*. When the plaintiff appeared for trial on the rescheduled date, the law firm again appeared with "no client representatives, no witnesses, and no evidence[,]" and dismissed the case. *Id*.

After the dismissal of the state court case, the plaintiff filed suit under the FDCPA against the law firm. *Id*. The plaintiff alleged that the law firm violated section 1692e(5) by threatening to go to trial even when it did not intend to pursue a trial. *Id*. at 690, 695. For support, the plaintiff submitted six other cases where the law firm obtained or attempted to obtain default judgments against debtors despite appearing without the ability to introduce evidence, and seven

8

cases where the law firm appeared without supporting documentation, and, when the court asked for supporting documentation, requested a continuance and then ignored the case.  *Id*. at 690.

The Eighth Circuit found that the plaintiff sufficiently stated a claim under section 1692e(5).  It explained that "[a] communication to a debtor is a § 1692e(5) 'threat' if an unsophisticated consumer would likely be led to believe that the debt collector would take an action."  *Id*. at 695.  The law firm argued that the plaintiff failed to allege that it "made affirmative representations that it definitively intended to try the . . . case."  *Id*. (internal quotations omitted).  The court rejected this argument, stating that "whether a statement is a threat turns on what it likely leads people to believe; it need not be an 'affirmative representation.'"  *Id*. (citing *Duffy*, 215 F.3d at 875).  The court also explained that "conditional statements can be threats."  *Id*. (citation omitted).  Accordingly, the court found that the law firm's "potential liability flowed from an alleged threat to proceed to trial."  *Id*.  Simply put, its liability depended on whether it falsely threatened to proceed to trial.  *Id*.

Albright also cites a case from the Third Circuit.  In *Brown v. Card Service Center*, 464 F.3d 450, 451 (3d. Cir. 2006), the debt collector sent a debt collection letter threatening legal action against the plaintiff if the debt remained unpaid.  In relevant part, the letter stated:

> You are requested to contact the Recovery Unit of the Card Service Center . . . to discuss your account.
>
> Refusal to cooperate could result in a legal suit being filed for collection of the account.
>
> You now have five (5) days to make arrangements for payment of this account. Failure on your part to cooperate could result in our forwarding this account to our attorney with directions to continue collection efforts.

*Id*. at 452.  The plaintiff filed suit, alleging that the debt collector violated a section 1692e(5) because it sent the plaintiff a letter threatening legal action even though it did not intend to file a

9

suit or refer the action to an attorney. *Id*. at 451–52. The District Court dismissed the claim, emphasizing that the letter "employed the conditional term 'could' as opposed to the affirmative term 'will.'" *Id*. at 454. "As a result, the District Court concluded that the . . . Letter poses no 'threat' pursuant to § 1692e(5), and because the letter simply advises plaintiff of options available to [the debt collector], the letter is not 'false, deceptive, or misleading' under § 1692e, even if action were not intended to be taken." *Id.* (citation omitted and some internal quotations omitted).

After ruling that the unsophisticated consumer standard applied to FDCPA claims, *id*. at 454, the Third Circuit stated that it "disagree[d] with the District Court because [it] conclude[d] that it would be deceptive under the FDCPA for [the debt collector] to assert that it *could* take an action that it had no intention of taking and has never or very rarely taken before." *Id*. at 455 (emphasis in original). It further explained that "[u]pon reading the letter, the least sophisticated debtor might get the impression that litigation or referral to a . . . lawyer would be imminent if he or she did not respond within five days." *Id*. Thus, "[i]f [the plaintiff] can prove[] after discovery that [the debt collector] seldom litigated or referred debts such as [the plaintiff's] . . . to an attorney, a jury could conclude that the . . . Letter was deceptive or misleading vis-à-vis the least sophisticated debtor." *Id*.

*Brown* also relied on the Federal Trade Commission's Commentary on the FDCPA to further support its holding. *Id*. The FTC's Commentary states, in relevant part:

> Statement of possible action. A debt collector may not state or imply that he or any third party may take any action unless such action is legal and there is a reasonable likelihood, at the time the statement is made, that such action will be taken. A debt collector may state that certain action is possible, if it is true that such action is legal and is frequently taken by the collector or creditor with respect to similar debts; however, if the debt collector has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading.

10

Federal Trade Commission, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50106 (Dec. 13, 1988): § 807(5)–3; *see also Brown*, 464 F.3d at 455.  "In other words, were it proven that [the debt collector] had reason to know that the legal action described in its letter to [the plaintiff] was unlikely, its statement that it was possible could be deemed misleading."  *Brown*, 464 F.3d at 455.  Like the Third Circuit, *id*., the Eighth Circuit has found the FTC's Commentary persuasive when interpreting the FDCPA.  *See Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (8th Cir. 2011) ("Although the FTC's interpretation is not binding, we have found this same Staff Commentary persuasive in the past when construing other sections of the FDCPA." (citing *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008) ("This interpretation is confirmed by the relevant part of the Federal Trade Commission's December 1988 Staff Commentary on the Fair Debt Collection Practices Act. . . .").

Here, Clayton and Myrick sent two letters to Albright stating that it may file suit or refer her case to an attorney if she did not settle her Complete Fitness debt.  Doc. 80-2 at ¶¶ 9, 13.  *Demarais*, *Brown*, and the FTC Commentary provide that if Clayton and Myrick did not intend to file suit or refer her case to an attorney, or it was unlikely that Clayton and Myrick would take those actions, the letters to Albright could be found to have violated section 1692e(5).  To support her contention that Clayton and Myrick did not intend or knew it was unlikely suit would be filed or the case referred to an attorney, Albright presents evidence showing that even though Internal Credit Systems assigned approximately 180 Complete Fitness accounts to Clayton and Myrick in the last five years, Clayton and Myrick never filed suit or referred any account to an attorney, save for the present matter which only came about because Albright sued Clayton and Myrick first.  Doc. 80-2 at ¶¶ 5–6, 14–16, 18.

11

Defendants do not dispute these facts, and even explicitly admit that they "have never filed suit on behalf of Complete Fitness[.]" Doc. 84-1 at ¶ 1. Instead, Defendants argue that the letters did not threaten legal action, but rather "simply stated the truth, that if the debt were unpaid, then Defendants may be instructed to take legal action and forward the matter to local counsel for further action." Doc. 84 at p. 2. Yet, later in their opposition brief, Defendants admit they threatened legal action, stating "[o]wing a debt is a legal matter which subjects the debtor to possible legal action, which is all that was threatened in this case." *Id*. at p. 3. Regardless of whether Defendants couch the letter as threatening legal action, both statements illustrate that Defendants' opposition stresses that the FDCPA permits debt collectors to inform debtors of the consequences of failing to pay debts, including providing notice that legal action may follow.

While the FDCPA permits debt collectors to inform debtors of the consequences of failing to pay debts, Defendants' reliance on this accurate statement of law is misplaced. Defendants fails to confront the central question in this case—whether the collection letters sent to Albright stating that that legal action may follow if her debt remained unpaid violated section 1692e(5) of the FDCPA because Defendants never intended to initiate legal action or refer the case to a local attorney, or it was at least unlikely that they would. *See Demarais*, 869 F.3d at 695; *Brown*, 464 F.3d at 455; and Federal Trade Commission, Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50106 (Dec. 13, 1988): § 807(5)–3. Defendants never address *Demarais* or the FTC Commentary, and distinguish *Brown* only by emphasizing that the court ruled that it would be up for a jury to decide whether the letter sent to Albright violated the FDCPA. Doc. 84 at p. 4. Nevertheless, the distinguishable characteristics of *Brown* and *Demarais* have significance for the present motion.

While *Brown* and *Demarais* demonstrate that Albright has an actionable claim, they have limited value at the summary judgment stage given that both cases involved motions to dismiss. *Brown* also only provides that a statement threatening legal action "*could* be deemed misleading" if the debtor proved that the debt collector knew that the threatened legal action was unlikely. 464 F.3d at 455 (emphasis added). Albright acknowledges that *Brown* involved a motion to dismiss and states that she "does not seek to shy away from presenting this case to the jury," but argues trial "is unnecessary here." Doc. 85 at p. 4. For support, Albright merely cites two cases outside this circuit where the court affirmed or granted summary judgment in favor of the plaintiff on an FDCPA claim. *See e.g., Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir. 1982); *Manuel v. Merchants & Pro. Credit Bureau, Inc.,* 402 F. Supp. 3d 361, 369 (W.D. Tex. 2019)*, aff'd sub nom. Manuel v. Merchants & Pro. Bureau, Inc.*, 956 F.3d 822 (5th Cir. 2020). In *Baker,* however, both the District Court and Court of Appeals treated the case as submitted on the merits, not summary judgment. 677 F.2d at 778 n.1. In *Manuel,* the District Court relied on Fifth-Circuit precedent permitting district courts to determine the question of whether a letter is "deceptive, misleading, or unfair to an unsophisticated consumer" as a matter of law in certain circumstances, 402 F. Supp. 3d at 369 (citing *Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009)), but the appellate court affirmed solely on the isolated question of whether silence as to the age and time-barred nature of the debt violated the FDCPA. 956 F.3d 822. Thus, neither case aids Albright.

Here, the Court found only one case where the Eighth Circuit evaluated whether a district court reached the proper ruling on a plaintiff's motion for summary judgment on an FDCPA claim. *See Duffy v. Landberg*, 215 F.3d 871 (8th Cir. 2000). In *Duffy*, the District Court granted summary judgment in favor of a debt collector, and thus denied the debtor's cross motion for

13

summary judgment. The Eighth Circuit reversed on several grounds, including that the debt collector's statement that it "would" seek attorney's fees in a legal action the debtor violated section 1692e(5) because "it is clear that attorney fees would not have been recoverable in an action against debtors under Minnesota law[.]" *Id*. at 874. *Duffy* is therefore distinguishable in two ways. First, the debt collector's letter stated that it "would" take an action, rather than it "may" or "could." Second, it involved a "threat to take an action that cannot legally be taken[,]" *id*., while this case involves an action "that is not intended to be taken." Thus, *Duffy* does not support resolving this case, which presents a different question, on summary judgment.

In sum, no binding legal authority supports that a debt collector's letter stating that legal action "may" or "could" be taken, even with evidence supporting that the debt collector did not intend such action, *is* misleading to an unsophisticated consumer. The determination as to whether such a letter could be deemed misleading in light of the evidence in this case will be left for a jury to decide. Accordingly, because the Court does not conclude Albright is entitled to judgment as a matter of the law, the Court denies Albright's [80] Motion for Summary Judgment. The Court also denies Albright's request of oral argument, Doc. 80 at p. 1, as moot. The Court orders the parties to mediation and will enter a separate order referring the parties to mediation. Lastly, the Court sets this matter for trial on Monday, January 10, 2022 at 9:00 a.m. in Courtroom 14-North.

So Ordered this 24th day of August 2021.

_SL R. CQ_
_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**